Ruffin, Chief Justice.
The instruction to the jury upon the statute of limitations, seems to the court to lay down a principle that is not entirely correct. The possession of George W. Montgomery is presumed to be upon his own title, and for his own benefit, and therefore, adverse to the plaintiffs, as to the rest of the world, unless the circumstance that he had acquired the possession of the negro as owner of a particular estate, prevents a possession, continued after the expiration of a particular estate, from becoming adverse to the remainderman. The plaintiffs cannot treat his possession as their own, upon the ground that some of them were infants; for, with respect to the statute of limitations, this action is to be regarded as if William Montgomery, who was of age more than three years beiore suit brought, was the sole plaintiff. Riden v. Frion, 3 Murp. 577. His Honor, indeed, placed the question exclusively on the fact that the plaintiffs were remaindermen. As we understand his language, he held that the possession in this case, after the death of Mrs. Montgomery and her children, could not, in law, be deemed adverse, upon the strength of the possession itself, and the notorious exercise of all ordinary acts of ownership however long continued; but that there must be some further and distinct declaration, or. act of the party, for the purpose of specially signifying or making known that he claim *531 ed the negro as his own property, and held adversely to the remaindermen. .
t0 land> the particu-i»r tenant verfstands raan asa wards bis Buttheldeá of such ten-anev does belong °fVn" tates in per-ofts°]nsala“ja‘ót out tract’ie-0"" hveen lhe parties.
The rule thus laid down, would have an important influence on the right to a most valuable species of property amongst us, and we are not prepared to give our assent to it. By it, the owner of a particular estate and the remainderman are placed upon the footing of bailee and bailor; of which, we are not satisfied. As to land, the particular tenant holding over, stands perhaps towards the remaindermen as a ten- ° 1 1 1 # ant towards a landlord. But the idea of such a tenancy does not belong to the ownership of distinct successive estates in personal chattels, and not arising out of any between the parties, or those under whom they claim. The one is not obliged to preserve the interest of the other. The owner of the present interest is not the bailee of the owner of the future interest; and there seems to be no reason of policy to authorise the fictitious creation ol that relation tween them. In many cases, no doubt, the jury may justly infernas a fact, that the possession thus continued is not verse to the remainderman. • In the present case, for example, it would be a natural inference, that alter the death their mother, the father retained the possession for her dren. They were his own; were infants probably, living with him; and the limitation over to them was in clear terms that could not be misapprehended even by a layman. Besides, the father had no shadow of claim against his children. But none of those reasons apply to the present plaintiff, and the same inference will not arise in any. mind.— The plaintiffs are strangers to G. W. Montgomery, or connected with him collaterately and remotely only; one of them is of full age, and resident probably in the same neighborhood; and they claim under a bequest which is valid only by professional construction, and taken literally, would render the limitation to them void. Is it not probable that G. W. Montgomery did not know that “or” could be read “and;” and that therefore he might suppose the gift to his children to be in law, absolute? If he did so believe, then upon the death of the children, the lather would be entitled as their next of kin; and if he so claimed, his possession was adverse. For adverse possession, consists of actual posses *532 sion, with an intent to hold solely for the possessor to the es‘c^u®011 °f others. No color of title is requisite on which to found the possession of personal chattels; and with or without a good title the possession will be adverse, if the party held for himself. But a colourable title or a plausible claim may tend to evince the nature of the possession; whe-J / ' ther, for example, it be adverse or subservient to another ti-tie. If the principle stated by his Honor, be admitted to be generally true, yet we think these are.plainly grounds in this case, on which a jury might find the possession to be adverse, without any precise declaration to that effect, or an act for Ihe special purpose of making known his claim. With what actual intent the possession was kept, was for the determination of the jury, aided, indeed, by legal presumptions to a extent< ^ ^rom ^ terms of the will, and the inter-that an ordinary man would put on it, and from the length of the possession by G. W. Montgomery and his administrator, after the death of his children, and from the acts of ownership, the jury inferred that the defendant, and ( those under whom he claims, m fact, believed the title of G. W. Montgomery to be good, and for that reason kept the possession, the jury should have been instructed that such possession was adverse. We think those circumstances are evidence on which a jury might found such an inference, without the declaration required in the instruction, and without any farther act than the possession and the exclusive exercise of dominion over the negro; and therefore that the judgment must be reversed, and a venire de novo awarded.
Adverse possession consists of session P°S tenuolioid solely for sor to ihees ofhers^and as no col-Srequisite chattels, without a good title, iti6 possession will if6théV pari idm'°iir for
Per Curiam. Judgment reversed.